UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DAWN HARGRAVE<br>　　La. DOC #492910 | CIVIL ACTION NO. 08-0797 |
| VS. | SECTION P |
| | JUDGE DOHERTY |
| MARIANA LEGER, WARDEN | MAGISTRATE JUDGE HANNA |

<u>REPORT AND RECOMMENDATION</u>

Dawn Hargrave, an inmate in the custody of Louisiana's Department of Public Safety and

Corrections,  filed the instant *pro se* petition for writ of *habeas corpus* on June 5, 2008.

Petitioner attacks her 2005 second degree murder conviction in the Fifteenth Judicial District

Court, Vermilion Parish. This matter has been referred to the undersigned for review, report, and

recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of

the court. For the following reasons it is recommended that the petition be **DISMISSED WITH**

**PREJUDICE.**

*Background*

The facts of the case were recited by the Third Circuit Court of Appeals as follows:

On July 26, 2002, Defendant was at a bar in Kaplan with a friend, Trenda Nichols
Pratt. Defendant left the bar. Defendant admitted in a statement to the
investigating officers that she went to J.D. Hebert's residence to borrow money
from him. When Defendant returned to the bar, she was bleeding, had cuts on her
face, and an injury to one eye. Pratt drove her first to Abrom Kaplan Memorial
Hospital and later to Lafayette General.

Meanwhile, at about 9:30 p.m., Hebert, who was seventy-three years old,
telephoned one of his daughters, Ellen Bufford, who lived next door. She went to
his house and found him bloodied, with swelling on his head, and complaining of
pain. He was doubled over, holding his abdomen, and complaining of a strong

2

urge to urinate. Since Hebert seemed to be in severe pain, his daughter called an
ambulance and the Sheriff's Department. Hebert arrived at Abrom Kaplan
Memorial Hospital at approximately 11:00 p.m. Bufford called her brother,
Joseph Hebert, who also drove to his father's residence and saw his injuries. He
noticed that the residence was in disarray. The first deputy on the scene was Allen
Bernhart. He observed that Hebert was bleeding from his head and had wounds on
his arms. Hebert spoke but was incoherent at times. The deputy also noticed the
room was in disarray and that there was a significant amount of blood spatter.

Hebert was later air-lifted from Abrom Kaplan Memorial Hospital to Our Lady of
Lourdes Hospital. There, the staff performed a hernia operation. Hebert's health
appeared to improve at first, but then deteriorated, and he died on August 2, 2002
of what was later determined to be a head injury received on July 26.

*State of Louisiana v. Dawn R. Hargrave*, 2005-1027 (La.App. 3 Cir. 3/1/06) at **1-2, 926 So.2d
41 at 42-43.

On September 19, 2002, the Vermilion Parish Grand Jury indicted petitioner charging her

with the first degree murder of J.D. Hebert. [Doc. 19, State Court Record (SCR), Vol. 1, pp. 15-

16]  On December 11, 2002 the charge was amended to second degree murder. [SCR, Vol. 1, p.

82] On January 18, 2005 petitioner waived her right to trial by jury. [SCR, Vol. 3, pp. 685-690]

Her trial commenced on January 25 and on January 26, 2005 she was found guilty as charged.

[SCR, Vol. 2, pp. 251-500 – Vol. 3, p. 581]  On February 24, 2005 the mandatory life sentence

was imposed. [SCR, Vol. 3, pp. 583-586]

Her motion for appeal was granted  and the Louisiana Appellate Project was appointed to

represent her on appeal.  [rec. doc. 9, pp. 32-33; pp. 34 and 35] She appealed her conviction and

sentence to the Third Circuit Court of Appeals arguing the following Assignments of Error:

(1) sufficiency of the evidence; (2) invalid waiver of the right to jury trial; and, (3) excessiveness

3

of sentence. [rec. doc. 9, pp. 1-20; see also SCR, Vol. 3, pp. 587-606][1]

On March 1, 2006 her conviction and sentence were affirmed. *State of Louisiana v. Dawn R. Hargrave*, 2005-1027 (La. App. 3 Cir. 3/1/2006), 926 So.2d 41. [see also rec. doc. 9, pp. 21-31] In a letter dated March 3, 2006, her court-appointed appellate counsel mailed a copy of the Third Circuit's opinion and advised petitioner that the Louisiana Appellate Project would no longer represent her.  He further advised her that she had 30-days calculated from the date of the Third Circuit's opinion (March 1, 2006) to seek writs in the Louisiana Supreme Court. [rec. doc. 12, Exhibit A,  pp. 10-22] Petitioner claims that she has no evidence to establish when she received counsel's letter, however, she admits that she received a copy of the Third Circuit's opinion on appeal on March 23, 2006 and offers a time-stamped, certified mail envelope post-marked March 2, but date-stamped as "received March 23, 2006." [rec. doc. 12, p. 2, rec. doc. 12,  Exhibit A,  p. 9]

On some unspecified date she claims to have submitted a motion requesting an extension of time to file her writ application in the Louisiana Supreme Court; she claims that her motion

---

[1] In her first Assignment of Error, petitioner argued, "The Appellant was not informed of nor did she knowingly and intelligently waive her constitutional right to a trial by jury." The second Assignment of Error was framed as follows, "The evidence herein is legally insufficient to sustain the conviction for Second Degree Murder." [rec. doc. 9, p. 8; SCR, Vol. 3, p. 594]

In her argument in support of Assignment of Error Number One, petitioner cited only Louisiana statutory law, LSA Constitution, Article 1, §17, and LSA C.Cr.P. art. 780, and Louisiana jurisprudence in support of her claim. [rec. doc. 9, pp. 9-11; SCR, Vol. 3, pp. 595-597]

In support of Assignment of Error Number Two, petitioner cited the appropriate federal standard as enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and argued that the prosecution failed to negate the defense theory of self-defense. In the alternative, she argued that at worst, the evidence adduced at trial was sufficient only to establish manslaughter. [rec. doc. 9, pp. 11-17; SCR, Vol. 3, pp. 597-603]

Finally, petitioner argued a claim of excessiveness of sentence. In this final assignment, petitioner claimed that the sentence violated the prohibition against cruel and excessive sentences as proscribed by Article 1, §20 of the Louisiana Constitution. [rec. doc. 9, pp. 17-18; SCR, Vol. 3, pp. 603-604]

4

was denied and that she received notice of the denial of her motion from the Louisiana Supreme
Court on May 30, 2006, as evidenced by an envelope addressed to her from that court. [rec. doc.
12, Exhibit B, p. 23] In an undated pleading, date stamped as received on May 25, 2006,
petitioner applied for a writ of review in the Louisiana Supreme Court, raising her claims of
insufficiency of evidence and waiver of jury trial. [SCR, Vol. 3, pp. 636-641] The State Court
Record also contains an envelope mailed to the Supreme Court by petitioner. The envelope
indicates that it was tendered to prison authorities for mailing on April 2, 2006 and received at
the Louisiana Supreme Court on April 6, 2006. [SCR, Vol. 3, p. 662]

On November 22, 2006 her writ application was denied.  *State of Louisiana v. Dawn R.
Hargrave*, 2006-1233 (La. 11/22/2006),  942 So.2d 552.  She did not seek further direct review
in the United States Supreme Court. [rec. doc. 1, ¶6(d)]

On October 24, 2007 petitioner filed a *pro se* application for post-conviction relief in the
Fifteenth Judicial District Court. She argued claims virtually identical to the claims raised on
direct appeal, namely, that the evidence was insufficient to establish that she did not act in self
defense [rec. doc. 9, pp. 71-75; SCR, Vol. 3, pp. 676-680] and, that she was not informed of nor
did she waive her right to trial by jury as guaranteed by the Louisiana Constitution. [rec. doc. 9,
pp. 75-77 and, p. 87; SCR, Vol. 3, pp. 680-682] The application was filed and forwarded to the
trial judge by the Clerk of Court on November 8, 2007. [rec. doc. 1, p. 12; rec. doc. 9, pp. 44-52
and pp. 59-87[2]]

---

[2] Petitioner signed her *pro se* application for post-conviction relief on October 24, 2007 [rec. doc. 9, p. 85;
SCR, Vol. 3, p. 672] and that is therefore the earliest date that the pleading could be filed under the "mailbox" rule.
In *State ex rel. Egana v. State*, 00-2351 (La.9/22/00), 771 So.2d 638, the Louisiana Supreme Court approved of the
use of the "mailbox rule" referred to in *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245
(1988), for *pro se* appeals. *Houston* held that a *pro se* prisoner's pleading is "filed" at the moment of delivery to
prison authorities for forwarding to the district court.  The earliest date the pleading could have been delivered to the

5

On November 13, 2007 the trial judge denied petitioner's application for post-conviction relief [rec. doc. 9, p. 52; SCR, Vol. 3, p. 682] as follows, "Denied. The Minutes of the Court's proceeding on 18 January 2005 record that the Court advised the Defendant of 'her right to trial by jury' and that Defendant waived the jury and requested a trial by judge alone." [SCR, Vol. 3, p. 682]. The Clerk of Court mailed a copy of the judgment denying relief to petitioner *via* certified mail. [rec. doc. 1, pp. 9 and 11] According to the return receipt, the judgment was apparently received by a "Sgt. Brown" at the Louisiana Correctional Institute for Women (LCIW) on November 20, 2007. [rec. doc. 1, p. 11] However, according to the Legal Mail Logs for the prison, LCIW authorities have no "...  record of [petitioner] receiving any legal mail during [the month of November 2007]..."  [rec. doc. 10]

In May 2008 petitioner corresponded to the Vermilion Parish Clerk of Court requesting information on her application for post-conviction relief.  On May 28, 2008 the Clerk responded by providing copies of  the certified mail receipts showing that judgment was mailed to petitioner in November, 2007. [rec. doc. 1, pp. 9-12] Petitioner did not seek review of the denial of her application for post-conviction relief.  She claimed that the prison authorities neglected to deliver the trial court's judgment denying her application for post-conviction relief.

Petitioner's undated petition for writ of *habeas corpus* was mailed on June 4, 2008 [rec. doc. 1, p. 13]; it was received and filed on June 5.  Petitioner argues two claims for relief: (1) sufficiency of the evidence; and, (2) petitioner claims that she was not informed of and consequently did not voluntarily waive her right to trial by jury.

---

prison authorities for mailing is the date petitioner signed the pleading and therefore, for the purposes of this Report, it is assumed that the date petitioner signed her  pleading is the date she filed it.

6

In due course, the petition was served and on January 5, 2010 the Respondent answered conceding exhaustion but arguing that the limitations described by 28 U.S.C. §2244(d)(1) are applicable and bar review of petitioner's claim. Respondent also responded to the merits of petitioner's claims. [rec. doc. 19]

### Law and Analysis

**1. Limitations**

> **a. 28 U.S.C. §2244(d)(1)(A)**

Title 28 U.S.C. §2244(d)(1)(A) (as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 or AEDPA) provides a one-year statute of limitations for the filing of applications for *habeas corpus* by persons, such as petitioner, who are in custody pursuant to the judgment of a State court.  This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[3]

The statutory tolling provision of 28 U.S.C. § 2244(d)(2)  provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period.  *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2).  However, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period  [see *Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir.

---

[3] Nothing in the record before the court suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review, or that the factual predicate of the claims presented was only recently discovered and therefore limitations need not be reckoned as provided by 28 U.S.C. § 2244(d)(1) (C), or (D).  To the extent that petitioner relies on the provisions of §2244(d)(1)(B), a discussion follows.

7

1999), citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)] and, of course, the limitations period is tolled only for as long as the state application remains pending in the state's courts.  *Johnson v. Quarterman*, 483 F.3d 278 (5th Cir. 2007).

Petitioner appealed her conviction and sentence to the Third Circuit Court of Appeals. On March 1, 2006 her  conviction and sentence were affirmed.  *State of Louisiana v.  Dawn R. Hargrave*, 2005-01027  (La. App. 3 Cir. 3/1/2006), 926 So.2d 41.  The Court of Appeals presumably mailed Notice of Judgment to petitioner's appellate attorney on that same date and on March 3, 2006 the attorney mailed a copy of the Third Circuit's opinion to her and advised her that the Appellate Project would not seek further direct review in the Supreme Court. Petitioner was further advised that she had 30-days calculated from March 1, 2006 within which to invoke the supervisory jurisdiction of the Louisiana Supreme Court. [rec. doc. 12, Exhibit A, pp. 10-22] Petitioner however, did not receive the opinion and letter from counsel until March 23, 2006. [rec. doc. 12, p. 2, rec. doc. 12, Exhibit A, p. 9]

On some unknown date petitioner sought an extension of the time for seeking further direct review, but her request was denied and she received notice of the denial on May 30, 2006. [rec. doc. 12, Exhibit B, p. 23] Her writ application was date stamped as having been received in the Supreme Court on May 25, 2006. [SCR, Vol. 3, pp. 636-641] However, petitioner submitted correspondence to the Court on April 2, 2006. [SCR, Vol. 3, p. 662][4]

If petitioner's writ application was filed within the 30-day period of limitation established

---

[4] The State Court Record contains a copy of an envelope addressed to the Supreme Court. While the post-mark is illegible, the document plainly shows that it was presented to prison authorities no later than April 2, 2006. [SCR, Vol. 3, p. 662] As noted above, the Louisiana Supreme Court applies the "mail box" rule with regard to prisoner suits. *State ex rel. Egana v. State*, 00-2351 (La.9/22/00), 771 So.2d 638.

8

by Supreme Court Rule X, §5(a),[5] then her judgment of conviction and sentence became final

under §2244(d)(1)(A) 90-days after the Louisiana Supreme Court denied writs, or on or about

February 22, 2007. See *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir.2003) (The statute of

limitations for bringing a federal *habeas* petition challenging a state conviction begins to run on

"the date on which the [state] judgment became final by the conclusion of direct review or the

expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a petitioner

has pursued relief on direct appeal through the Louisiana Supreme Court, her conviction

becomes final ninety days after that court's judgment is entered, upon the expiration of time for

filing an application for writ of certiorari with the United States Supreme Court.)

On the other hand, if her application for further direct review was untimely – that is to

say, filed beyond the 30 day period defined by Supreme Court Rule X, §5(a) – then her

conviction became final 30 days after March 1, 2006  – the date the Third Circuit mailed notice

of judgment, because  "[i]f the defendant stops the appeal process before that point, the

conviction becomes final when the time for seeking further direct review in the state court

expires." *Id.* at 694.

The evidence before the Court is insufficient to establish the date petitioner's judgment of

conviction became final by the conclusion of direct review because it is impossible to determine

when petitioner submitted her writ application to prison authorities for mailing.   If the petitioner

timely filed her writ application in the Supreme Court by delivering her pleading to prison

---

[5] Louisiana Supreme Court Rule X, §5(a) provides, "An application seeking to review a judgment of the court of appeal ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal..." Section 5(d) provides, "An application properly mailed shall be deemed timely filed if mailed on or before the last day of the delay for filing. If the application is received by mail on the first legal day following the expiration of the delay, there shall be a rebuttable presumption that it was timely filed."

9

authorities for mailing before the expiration of the 30 day limitations period established by Rule X, §5(a),  then, as noted above, her judgment became final for AEDPA purposes on or about February 22, 2007.  Thereafter, she filed a timely application for post-conviction relief on October 24, 2007 and that filing served to toll limitations pursuant to §2244(d)(2).  However, a period of approximately 9 months of the one year period elapsed before the collateral attack was filed. The pleading remained pending only until November 13, 2007 when the trial court denied relief. Thereafter, statutory tolling ceased and another 6 months or more elapsed before petitioner filed her federal *habeas corpus* petition on June 4, 2008. Therefore, even if the date of finality of judgment is calculated in petitioner's favor, it nevertheless appears that the instant petition was untimely.

### b. Equitable Tolling

The Fifth Circuit has held that the AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. See *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quotation marks omitted). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir.2006).  As recently noted by the Supreme Court, "To be entitled to equitable tolling, [the petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336,  127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007) (quoting

10

*Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)).

Here, the evidence supports that petitioner may be entitled to equitable tolling. As noted above, there were delays involved in providing petitioner with the Third Circuit's Notice of Judgment. The evidence establishes that the Vermilion Parish Clerk of Court sent a copy of the trial court's judgment denying petitioner's application for post-conviction relief to petitioner *via* certified mail in November 2007. The record further shows that this correspondence was received by mail room personnel at the Louisiana Correctional Institute for Women on November 20, 2007. [rec. doc. 1, p. 11] However, LCIW has no record showing that petitioner received any legal mail during the month of November 2007, corroborating petitioner's claim that she did not receive notice of the denial of her application for post-conviction relief. In May of 2008, i.e. about 6 months after the notice had been mailed, petitioner inquired and was notified of the November denial on May 28, 2008.  The petitioner responded with the application for *habeas corpus* relief about one week later.

In *Hardy v. Quarterman,* 577 F.3d 596 (5th Cir. 2009), the Court applied equitable tolling where a petitioner waited less than a year to inquire about the status of his case. Therefore, given the petitioner's claim she was unaware that her post-conviction application had been denied and tolling ceased until May 28, 2008 when her inquiry was answered by the Clerk of Court is corroborated by the evidence, combined with the fact petitioner promptly filed her petition for *habeas corpus* relief after learning of the denial, the undersigned finds that petitioner is entitled to equitable tolling.

### c. Title 28 U.S.C. §2244(d)(1)(B)

Notwithstanding the foregoing, Petitioner is not entitled to rely on the statutory tolling

11

provision of §2244(d)(1)(B) which provides that the one-year period of limitations may be calculated from "... the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action..."  As shown above, the Vermilion Parish Clerk of Court did timely provide notice to the address of petitioner that her application for post-conviction relief was denied. Despite the claim that she did not receive legal mail from LCIW for the month of November, there is no evidence that there was any "State action in violation of the Constitution or laws of the United States" that actually prevented the filing of the petition. Therefore, the petition is untimely and it is recommended that the petition be denied on this basis.

### 2. Merits

Even if petitioner is afforded the benefit of the doubt with regard to the date her judgment of conviction became final for AEDPA purposes; and, even if she is afforded the benefits of statutory or equitable tolling, she is not entitled to *habeas corpus* relief.

Petitioner raised her *habeas corpus* claims as Assignments of Error One and Two in her direct appeal to the Third Circuit Court of Appeals. She also presented these claims to the Louisiana Supreme Court in her application for writs seeking review of the judgment of the Third Circuit on direct review. The Third Circuit addressed the merits and then rejected both claims, therefore this Court must utilize the Standards for Review as set forth in 28 U.S.C. § 2254(d)(1) and (2) which define the standard for review.  Under these provisions, *habeas* relief is not available to a state prisoner on a claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

12

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1) and (2).

Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001).  The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Id.* at 409-10. A state court's <u>incorrect</u> application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>. *Id.* at 410-12 (emphasis supplied).

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court

13

proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the

state court's factual findings are correct. See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th

Cir.2000).

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state

court's decision, not its reasoning or written opinion, to determine whether it is contrary to or a

misapplication of clearly established federal law." *Catalan v. Cockrell*, 315 F .3d 491, 493 (5th

Cir.2002), citing  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002)(*en banc*).

Both of petitioner's claims have been separately analyzed under these standards:


### a. Sufficiency of the Evidence

Petitioner argues that the evidence adduced at trial was insufficient to establish the

essential elements of second degree murder. She argued an identical claim as an Assignment of

Error on direct appeal to the Third Circuit Court of Appeal and then to the Louisiana Supreme

Court. The  Third Circuit adjudicated the merits of this claim and articulated the legal standard

for review as follows:

> It is important to note that there was no eyewitnesses to the crime with which
> Defendant was charged. As a result, the State relied upon circumstantial evidence
> to obtain the conviction. The standard for circumstantial evidence in a '*Jackson*
> review' is well-established:
>
>> In reviewing the sufficiency of the evidence to support a
>> conviction, an appellate court must determine that the evidence,
>> viewed in the light most favorable to the prosecution, was
>> sufficient to convince a rational trier of fact that all of the elements
>> of the crime had been proved beyond a reasonable doubt. *Jackson*
>> *v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
>> *State v. Captville*, 448 So.2d 676, 678 (La.1984).

14

> Further, when the conviction is based upon circumstantial
> evidence, LA.REV.STAT. ANN. § 15:438 provides that such
> evidence must exclude every reasonable hypothesis of innocence.
> *State v. Camp*, 446 So.2d 1207, 1209 (La.1984); State v. Wright,
> 445 So.2d 1198, 1201 (La.1984). However, LA.REV.STAT. ANN.
> § 15:438 does not establish a stricter standard of review than the
> more general rational juror's reasonable doubt standard; it is
> merely an evidentiary guide for the jury when considering
> circumstantial evidence. *State v. Porretto*, 468 So.2d 1142, 1146
> (La.1985).

> *State v. Manning*, 03-1982, p. 46 (La.10/19/04), 885 So.2d 1044, 1088, cert.
> denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005).

*State v. Hargrave*, 2005-1027 (La. App. 3 Cir. 3/1/2006), at **2-3, 926 So.2d 41 at 43-44.

After a discussion of the evidence adduced at trial, the Third Circuit concluded "...that the

evidence, 'viewed in the light most favorable to the prosecution was sufficient to convince a

rational trier of fact that all the elements of the crime was proved [sic] beyond a reasonable

doubt,' and excludes 'every reasonable hypothesis of innocense.' *Manning*, 885 So.2d at 1088."

*Hargrave*, 926 So.2d at 46-47.

The standard for testing claims of sufficiency of evidence in the context of a review of a

state court conviction pursuant to 28 U.S.C. §2254, is the standard enunciated in *Jackson v.*

*Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That is the same standard

articulated by the Third Circuit Court of Appeal. A federal *habeas* court may determine that the

evidence was sufficient to support a conviction if, when viewed in the light most favorable to the

verdict, any rational trier of fact could have found beyond a reasonable doubt that the accused

committed the essential elements of the crime. *Id.* at 319. On *habeas* review, the evidence need

not exclude every reasonable hypothesis of innocence or be completely inconsistent with every

15

conclusion except guilt so long as a reasonable trier of fact could find that the evidence

established guilt beyond a reasonable doubt. *United States v. Stevenson*, 126 F.3d 662, 664 (5th

Cir.1997).

In arriving at the conclusion that the evidence was sufficient under the *Jackson* standard,

the Court of Appeals made the following findings of fact; and each finding, as is shown more

fully below, was supported by the evidence adduced at the trial:

1. "Defendant concedes that she pushed the victim and kicked him in the testicles. She

also states that the victim fell against a 'tv stand.' However, she argues that she was defending

herself from sexual advances by the victim. Defendant did not testify, but her statement to police

was introduced at trial. In that statement, she claimed she went to the victim's residence to

borrow some money. According to Defendant, she used the restroom, and, when she came out,

the victim was nude. He then tried to force himself on her, but she pushed him away. Defendant

claimed the victim then poked her eye with 'some object,' then tried to force her head toward his

genitalia. She then kicked him in the groin, he fell, and she left the residence." *Hargrave*, 926

So.2d at  43.[6]

2. The Court then concluded that since her victim died from injuries received in the

---

[6] The actual statement given by petitioner to the Vermilion Parish Sheriff's Office is not included in the record. However, in her memorandum supporting the petition for *habeas corpus*,  petitioner has adopted almost verbatim the Statement of Facts recited by the Third Circuit Court of Appeals. See rec. doc. 1-2, p. 2, "Petitioner concedes that she pushed the victim and kicked him in the testicles, and the victim fell against a 'T.V. stand.' However, she argues that she had provocation because she was defending herself from being sexually assaulted. Petitioner did not testify, but her statement to police was introduced at trial as evidence. In that statement she stated her reason for going to the victim's residence was to borrow money. Shortly after arriving at the victim's home, petitioner asked to use the bathroom. As she was exiting the bathroom, the victim was nude and tried to force himself on her. She pushed him away and he came at her again. This time poking her in the eye with 'some object' and he tryed [sic] to force her head toward his genitalia. Petitioner then kicked him in the groin, and he fell. She left his residence."

16

incident, petitioner could claim self-defense "... only if [she] reasonably believed (objective) that

[she] was in imminent danger of losing [her] life or receiving great bodily harm and that deadly

force was necessary to save [herself]..." *Hargrave*, 926 So.2d at 44-45. In concluding that self

defense was not an available defense, the Court relied upon the following facts:

> The victim's daughter and son and the deputy called to the scene, all described the
> victim as bloody. The victim had an obvious injury to the head and defensive
> wounds on his arms.[7] The medical evidence demonstrated that he had been
> 'beaten head to toe.' The victim was a small man, five feet, six inches tall and one
> hundred forty five pounds.[footnote omitted][8] As Defendant's trial counsel
> acknowledged, the victim was 'a frail old man.'[9] Pratt stated that the victim
> frequently 'made passes' at her but acknowledged that he was easily repelled
> because '[t]here was nothing to him.'[10] Defendant's height and weight are not in
> the record, but she was apparently in her mid-thirties, much younger than the
> victim. The testimony also indicated that she was a capable fighter and had
> battered the victim in a barroom prior to the offense at issue.
>
> The victim's daughter described him as being five feet nine inches tall and
> weighing one hundred twenty pounds.
>
> Baines Richard, an acquaintance of both the victim and Defendant, testified that
> he saw her 'cold-cock' the elderly man at a Kaplan bar called 'Rumors,' knocking

---

[7] Ellen Hebert Buford, the victim's daughter testified that when she arrived at her father's home , "He was laying on his day bed in the living room covered in blood, and his head was out to here (indicating.) [SCR, Vol. 2, p. 274] Likewise, Joseph Craig Hebert, the victim's son indicated that pictures taken of his father that night provided a true depiction of his injuries. [*Id*. p. 291] Vermilion Parish Sheriff's Deputy Allen Bernhart testified that upon entry into the crime scene he observed the victim to be incoherent, extremely bloody, especially his face, arms and head, covered in blood. He described the room as being "in a disarray" with blood splatter on the TV.  [*Id*., pp.343-344]

[8] Dr. Emil Laga, the pathologist who conducted the autopsy testified that the victim was 5'6" in height and that he weighed 145 lbs. [SCR, Vol. 2, p. 452] He described severe head injuries – a large 3-4 inch bruise on the left side of the head area, temple, extending behind the ear towards the back of the head, three horizontal lacerations on the upper eyelid, below the eye, and a big tear in the left ear. [*Id*., p. 454] He also testified that the victim was "beaten from head to toe." [*Id*. p. 459]

[9] During her cross examination of Trenda Pratt, counsel made the following remark with regard to the victim, "... He was a frail old man. I think we all agree to that." [SCR, Vol. 2, p. 424]

[10] See direct testimony of Trenda Pratt, who when asked, "... did you ever feel physically threatened [by the victim]" responded, "No... because I could have just shoved him away... there was nothing to him..." [SCR, Vol. 2, p. 413]

17

him from a stool. According to Richard, the incident occurred approximately six months before the offense at issue.[11] Pratt testified that a few months before the offense at issue, while at 'Rumors,' she saw Defendant grab the elderly victim by the neck and throw him under a pool table. It is not clear whether the two witnesses were describing two separate incidents or two versions of the same incident. In either case, this evidence shows that Defendant had the ability to physically dominate the victim, and was aware that she could do so prior to the offense at issue. Richard and Pratt both testified the dispute, or disputes, centered around money the victim had lent Defendant or Pratt.[12]

The record demonstrates Defendant had little to fear from the frail, elderly victim. Even if it became necessary for her to physically repel him, the force she used was clearly excessive. Dr. Emil Laga, the forensic pathologist who examined the victim's body, noted multiple external injuries including a three- to four-inch bruise on the left temple area of the head extending behind the ear towards the back of the head, three lacerations on the left upper eyelid, below the left eye, and on the left ear. Injuries to his legs included two bruises on the lower left leg and two on the right leg, a deep cut over his right knee, injuries to the groin, and a four-inch bruise on the left buttock. Dr. Laga agreed that the victim was beaten from head to toe, with the major injuries on the left side of his body. He opined that the injuries may have been inflicted by hitting him with the wooden TV tray, which was found at his residence.[13]

Given her history of physically dominating the victim, even Defendant's version of events does not depict a scenario in which she could reasonably have believed that she was in danger of death or great bodily harm or one that called for her to inflict great bodily harm or death in order to defend herself.

*State v. Hargrave*, 926 So.2d at pp. 45-46.

    Clearly, the facts relied upon by the Court in arriving at the conclusion that the evidence

was sufficient to establish all of the elements of second degree murder are supported by the

---

[11] See testimony of Baines Richard. [SCR, Vol. 2, pp. 363-365]

[12] See testimony of Ms. Pratt at SCR, Vol. 2, pp. 387-388, "She [Petitioner] grabbed him [victim] by the neck and threw him. And he flew underneath the bar – the pool table."

[13] See footnote 7, supra. See also the rest of Dr. Laga's testimony, SCR, Vol. 2, pp. 443-489. Among other things, Dr. Laga opined that the blow to the base of the victim's skull must have been "massive" in order to crack the bones in that location. [Id., p. 462] He also described fractures in the neck, breastbone and ribs. [Id., p. 465]

18

record as has been shown above.

Petitioner has provided a brief – virtually identical to the one submitted to the Court of Appeals – which argues the merits of her case. She has not argued and clearly not shown that the State Court's adjudication on the merits  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1) and (2).

Accordingly, she is not entitled to *habeas corpus* relief on her sufficiency of the evidence claim.

### b. Waiver of Trial by Jury

Petitioner argues that "... she was not informed of nor did she knowingly and intelligently waive, her right to trial by jury, as required by La. C.Cr.P. art. 780 and Article 1, Sec. 17 of the Louisiana Constitution." [rec. doc. 1-2, p. 9] Of course, petitioner is entitled to *habeas corpus* relief pursuant to 28 U.S.C. §2254 "... only on the ground that [she] is in custody in violation of the Constitution or laws or treaties of the United States." Here, petitioner argues only that her custody violates the Constitution and laws of the State of Louisiana and therefore her *habeas* petition fails to state a claim for which relief may be granted.

In any event, this claim was also adjudicated on the merits in the Third Circuit Court of Appeals. That Court rejected her claim as follows:

Appeal counsel for Defendant argues that she was not informed of, nor did she knowingly and intelligently waive, her right to trial by jury, as required by La.Code Crim.P. art. 780. In brief, he observes that the minutes of the original

19

record do not show that Defendant waived the right at all.  However, as the State points out in its brief, the original record was incomplete, as it contained neither the minutes nor the transcript of a hearing conducted on January 18, 2005. This court has obtained the omitted minutes and transcript, which both demonstrate that Defendant waived her right to a jury trial.

The minutes refer to the proceeding as an 'informal' decision to waive a jury trial, but the transcript shows that the reference is to an 'informed' decision to make a waiver. The transcript demonstrates that the Defendant was represented by counsel at the waiver hearing. The trial court called her to the stand and examined her before accepting her waiver of the right to a jury trial. The court established that the waiver was her idea and decision, not simply acquiescence with her counsel's advice.

This court has stated that:

> While one who is entitled to a jury trial may waive that right, such waiver shall not be presumed but must be established by a contemporaneous record setting forth the articulated apprisal of that right followed by a knowing and intelligent waiver by the accused. *State v. Smith*, 447 So.2d 4 (La.App. 3 Cir.1984). The denial of this fundamental right constitutes an error patent. *State v. Salata*, 479 So.2d 660 (La.App. 3 Cir.1985).

*State v. Morris*, 607 So.2d 1000, 1001 (La.App. 3 Cir.1992), writ granted and judgment set aside, in part, on other grounds and remanded, 615 So.2d 327 (La.1993), on remand, 619 So.2d 184 (La.App. 3 Cir.1993).

The record in this case establishes such a knowing and intelligent waiver.

*State v. Hargrove*, 926 So.2d at 47.

This finding of fact is also supported by the record. [See SCR, Vol. 3, pp. 685-689,

Transcript of the proceedings held on January 18, 2005.

The transcript reveals that the proceedings opened with the following statement by

petitioner's attorney, "We are here to inform the Court that Ms. Hargrave has made an informed

decision to waive the jury. I realize that the Court may want to ask her questions. But that is our

decision." Petitioner was placed under oath and the following exchange took place:

20

Court: Okay. So Ms. Hargrave, as I understand it, there are a number of doctors that are going to testify in your case; is that right?

Petitioner: Yes, sir.

Court: Okay, and I understand that you and your lawyer have talked about a plan to have this trial conducted over several consecutive days without any gap in time, and I believe I understand that you are also aware that if – that you are the next person scheduled to go to trial so that you are the second person on the docket now; is that right?

Petitioner: Yes, sir.

Court: And this is Tuesday, and your trial I'm told with all the witnesses may take a full five days with a jury?

Petitioner: Yes, sir.

Court: And given – I also understand that you have been informed that given the schedule that I have with this Court there is a possibility that we would have to start trial and then stop the trial for a period of days and then restart the trial?

Petitioner: Yes, sir.

Court: Okay. And I understand that that's – that is one reason among many why you've decided to waive the jury and proceed with a judge trial alone so that you could avoid that gap in time and all the evidence would be presented consecutively?

Petitioner: Yes, sir.

Court: Okay. And of course you know that you have a right to a jury trial and you can exercise that right?

Petitioner: Yes, sir.

Court: Okay. And – oh, I also understand that you have been informed that this trial could start as a judge trial on Monday with Judge Everett presiding?

Petitioner: Yes, sir.

Court: So your options are to proceed with that judge trial on Monday or proceed with jury trial starting tomorrow that may be interrupted. And considering both of

21

<u>those options, it's your preference to waive the jury?</u>

Petitioner: <u>Yes, sir</u>.

Court: Okay, and now my concern right now frankly is that you have let me do all the talking and you answer with just 'yes,' and so I really need to be sure that this is your idea and not just you going along with your lawyer's idea; do you understand?

Petitioner: Yes, sir.

Court. <u>Okay. Now I know you have a good lawyer and I know you have a lot of confidence in her, but I need to know that you have thought about this and this is really your decision</u>?

Petitioner: <u>It's my decision, sir</u>. [SCR, Vol. 3, pp. 686-688]

Clearly, the facts recited by the Third Circuit – "the transcript demonstrates that the Defendant was represented by counsel at the waiver hearing. The trial court called her to the stand and examined her before accepting her waiver of the right to a jury trial. The court established that the waiver was her idea and decision, not simply acquiescence with her counsel's advice." – are established by the district court's transcript. Once again, petitioner has not argued and therefore she has not shown that the  State Court's adjudication of the jury waiver issue (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1) and (2). Compare *Elliot J. Scott, aka Calvin Scott, v. Burl Cain, Warden*, No. 08-30631 (5th Cir. 2/2/2010) (unpublished).[14]

_____

[14] In this recently decided but unpublished appeal, the Fifth Circuit was confronted with the same issue. The colloquy between the state court judge and the *habeas* petitioner was as follows:

22

### *Conclusion and Recommendation*

Petitioner's habeas petition was untimely, having been filed beyond the one-year period

of limitations established by 28 U.S.C. §2244(d). However, it appears that petitioner is entitled to

the benefits of equitable tolling.

Nevertheless, petitioner has not shown, nor does the record suggest, that the State courts'

---

Court – "All right. Sir, you have a right to be tried before a Judge or a Jury. Make your selection."
Defendant – "Judge, Your Honor."

Following his conviction, petitioner ultimately sought *habeas corpus* relief and was granted a COA on the issue of whether or not the record established a valid waiver of trial by jury.

In denying *habeas* relief to this petitioner the Court observed,

> It is not clearly established, however, that the lack of a full colloquy invalidates an otherwise voluntary waiver. This court has held that the 'decision to proceed with a bench trial without [the defendant's] specific acquiescence ... runs afoul of the Constitution.' *United States v. Mendez*, 102 F.3d 126, 130 (5th Cir. 1996). Scott, however, explicitly agreed to be tried by the judge rather than the jury. We have also found that there was no knowing and intelligent waiver when '[t]he trial transcript is devoid of any discussion between the court and petitioner concerning his express and intelligent waiver of a jury trial.' *Landry v. Hoepfner*, 818 F.2d 1169, 1178 (5th Cir. 1987), *rev'd on other grounds* by 840 F.2d 1201 (5th Cir. 1988) (*en banc*) (holding that petitioner did not have an underlying Sixth Amendment right to a jury trial in the first instance). Here, though the record is not silent. It shows that Scott was informed of his right to be tried by a jury or by a judge, and that he chose the latter. The manner in which the state court explained the jury right was, to be sure, far from ideal. Were we considering Scott's case in the first instance, whether he knowingly and intelligently waived his right to a jury trial would present a close question. But, <u>given the deferential AEDPA standard under which we review state *habeas* decisions, we cannot say that the state court's determination that Scott validly waived his jury right applied clearly established federal law in an 'objectively unreasonable' manner.</u> *Bell v. Cone*, 535 U.S. 686, 699 (2002).

> *     *     *

> Additionally, neither this court nor the Supreme Court has defined fact-specific constitutional *minima* for a valid jury waiver, found a jury waiver insufficient in a situation analogous to Scott's, or required a set colloquy before a jury waiver can be accepted.

> *     *     *

> This court has 'no authority to grant *habeas corpus* relief simply because we conclude, in our independent judgment, that a state supreme court's application of federal law is erroneous or incorrect.' *Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005) (quotation and alteration omitted). Here, the state court found that Scott's waiver did not offend the Constitution, and thus that it was voluntary, knowing, and intelligent. <u>The minimum factual threshold for a knowing and intelligent personal waiver of the right to a jury trial is an open question when a defendant voices his preference for a bench trial in person. Thus, AEDPA decides the issue: we cannot say that the state court's decision here was an objectively unreasonable application of clearly established federal law.</u> *Scott v. Cain*, at 2, 7-10 (Emphasis Supplied)

23

adjudication of her sufficiency of the evidence and jury trial waiver claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1) and (2)**.**

**ACCORDINGLY,**

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

24

*See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana April 5, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)